**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SYLVESTER OWINO; JONATHAN GOMEZ, on behalf of themselves, and all others similarly situated, *Plaintiffs-Appellees*, <br><br> v. <br><br> CORECIVIC, INC., a Maryland corporation, *Defendant-Appellant*. | No. 21-55221 <br><br> D.C. No. 3:17-cv-01112-JLS-NLS <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted February 18, 2022
San Francisco, California

Filed June 3, 2022

Before: M. Margaret McKeown and William A. Fletcher,
Circuit Judges, and Richard D. Bennett,* District Judge.

Opinion by Judge McKeown

---

* The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

**SUMMARY***

---

**Class Certification / Victims of Trafficking and
Violence Protection Act**

The panel affirmed the district court's order certifying three classes in an action brought under the Victims of Trafficking and Violence Protection Act of 2000 by individuals who were incarcerated in private immigration detention facilities owned and operated by CoreCivic, Inc., a for-profit corporation.

U.S. Immigration and Customs Enforcement contracts with CoreCivic to incarcerate detained immigrants in 24 facilities across 11 states. Plaintiffs, detained solely due to their immigration status and neither charged with, nor convicted of, any crime, alleged that the overseers of their private detention facilities forced them to perform labor against their will and without adequate compensation in violation of the Victims of Trafficking and Violence Protection Act of 2000, the California Trafficking Victims Protection Act ("California TVPA"), various provisions of the California Labor Code, and other state laws.

The panel held that the district court properly exercised its discretion in certifying a California Labor Law Class, a California Forced Labor Class, and a National Forced Labor Class.

The panel held that, as to the California Forced Labor Class, plaintiffs submitted sufficient proof of a classwide

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

policy of forced labor to establish commonality. Plaintiff established predominance because the claims of the class members all depended on common questions of law and fact. The panel agreed with the district court that narrowing the California Forced Labor Class based on the California TVPA's statute of limitations was not required at the class certification stage.

For the same reasons as above, the panel held that, as to the National Forced Labor Class, the district court did not abuse its discretion in concluding that plaintiffs presented significant proof of a classwide policy of forced labor and that common questions predominated over individual ones. The panel held that under *Moser v. Benefytt, Inc.*, 8 F.4th 872 (9th Cir. 2021), CoreCivic's personal jurisdiction challenge with respect to the claim of non-California-facility class members was an issue for the district court to resolve. The panel declined to vacate the certification of the National Forced Labor Class, but it held that CoreCivic retained its personal jurisdiction defense, and the panel remanded the personal jurisdiction question to the district court for consideration at the appropriate time.

As to the California Labor Law Class, the panel held that plaintiffs established that damages were capable of measurement on a classwide basis, and they did not need to present a fully formed damages model when discovery was not yet complete. The panel agreed with the district court that the named plaintiffs were typical of the class they sought to represent and their allegations, if true, fit within California's Unfair Competition Law and the state labor law provisions they invoked. Narrowing the class based on statute of limitations was not required at the certification stage. The panel held that the district court did not abuse its discretion in certifying a failure-to-pay and waiting-time

claim, which was affirmatively interwoven in plaintiffs' pleadings.

## COUNSEL

Nicholas D. Acedo (argued), Daniel P. Struck, Rachel Love, Ashlee B. Hesman, and Jacob B. Lee, Struck Love Bojanowski & Acedo PLC, Chandler, Arizona, for Defendant-Appellant.

Eileen R. Ridley (argued) and Alan R. Ouellette, Foley & Lardner LLP, San Francisco, California; Robert L. Teel, Law Office of Robert L. Teel, Seattle, Washington; for Plaintiffs-Appellees.

## OPINION

McKEOWN, Circuit Judge:

This appeal arises from a class action filed by individuals who were incarcerated in private immigration detention facilities owned and operated by a for-profit corporation, CoreCivic, Inc. These individuals—detained solely due to their immigration status and neither charged with, nor convicted of, any crime—allege that the overseers of their private detention facilities forced them to perform labor against their will and without adequate compensation. Our inquiry on appeal concerns only whether the district court properly certified three classes of detainees. Considering the significant deference we owe to the district court when reviewing a class certification, as well as the district court's extensive and reasoned findings, we affirm the certification of all three classes.

## BACKGROUND

In 2017, Sylvester Owino ("Owino") and Jonathan Gomez ("Gomez") (collectively "Owino") brought a class action suit against CoreCivic. Both men were previously held in a civil immigration detention facility operated by CoreCivic—Owino from 2005 to 2015, and Gomez from 2012 to 2013. They filed suit "on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic," seeking declaratory and injunctive relief and damages, among other remedies, for "forcing/coercing detainees to clean, maintain, and operate CoreCivic's detention facilities in violation of both federal and state human trafficking and labor laws." Specifically, Owino alleged violations of the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1589 *et seq.* ("TVPA"), California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5 ("CTVPA"), various provisions of the California Labor Code, and other state laws.

Pursuant to 8 U.S.C. § 1231(g), U.S. Immigration and Customs Enforcement ("ICE") contracts with CoreCivic to incarcerate detained immigrants in 24 facilities across 11 states. According to Owino, those incarcerated in these facilities "are detained based solely on their immigration status and have not been charged with a crime." Because of this, ICE states these detainees "shall not be required to work, except to do personal housekeeping." These housekeeping duties are delineated in ICE's Performance-Based National Detention Standards ("Standards"): "1. making their bunk beds daily; 2. stacking loose papers; 3. keeping the floor free of debris and dividers free of clutter; and 4. refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture." Performance-Based National

Detention Standards 2011, at 406 (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds 2011r2016.pdf. The Standards also require facilities to provide detainees with the "opportunity to participate in a voluntary work program" ("Work Program") for which they must be compensated at least $1 per day. *Id.* at 406, 407.

Despite these guidelines, Owino contends that, "as a matter of policy," CoreCivic compelled him and detainees across its facilities to work "as a virtually free labor force to complete 'essential' work duties at their facilities," including such "foundational tasks" as kitchen and laundry services. CoreCivic's written policies require "all" detainees to "maintain[] the common living area [i.e., not the bunk bed area] in a clean and sanitary manner." The policies further require "[d]etainee/inmate workers" to carry out a "daily cleaning routine," to remove trash, sweep, mop, clean toilets, clean sinks, clean showers, and clean furniture, and to undertake "[a]ny other tasks assigned by staff in order to maintain good sanitary conditions." Yet, according to Owino, CoreCivic generally paid ICE detainees either $1 per day or nothing at all. Owino further contends that CoreCivic paid ICE detainees between $.75 and $1.50 per day for work that it "misclassified" as "volunteer," thus failing to pay wages that approximated the minimum hourly wage required by California law.

On April 15, 2019, Owino filed a motion for class certification, seeking to certify five classes:

1. California Labor Law Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013, and the present, and (ii) worked through CoreCivic's Voluntary Work Program during their period of detention in California.

2.   California Forced Labor Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006, and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the Standards, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid.

3.   National Forced Labor Class: All ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008, and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the Standards, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid.

4.   California Basic Necessities Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006, and the present, (ii) worked through CoreCivic's Work Program, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention in California.

5.   National Basic Necessities Class: All ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008, and the present, (ii) worked through CoreCivic's Work Program, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention.

A year later—following numerous filings, oral argument, and supplemental briefing—the district court certified three of the proposed five classes: (1) the California Labor Law Class, (2) the California Forced Labor Class, and

(3) the National Forced Labor Class. In an extensive and thoughtful order, the district court found the following:

1. California Labor Law Class: Owino and Gomez "adequately have established that they were never paid a minimum wage through the [Work Program]," that they "never received wage statements," and that CoreCivic "failed to pay compensation upon termination" and "imposed unlawful terms and conditions of employment." There were sufficient "common, predominating questions" to certify the class.

2. California Forced Labor Class: Owino and Gomez "sufficiently have demonstrated" that CoreCivic facilities in California "implemented common sanitation and disciplinary policies that together may have coerced detainees to clean areas of [CoreCivic's California] facilities beyond the personal housekeeping tasks enumerated in the ICE [Standards]."

3 National Forced Labor Class: Owino and Gomez "sufficiently have demonstrated" the same regarding CoreCivic facilities nationwide.

Due to the vulnerability of the class members and the "risks, small recovery, and relatively high costs of litigation," the district court concluded that "class-wide litigation is superior" because "no viable alternative method of adjudication exists."

## ANALYSIS

We review the district court's class certification for "abuse of discretion." *B.K. ex rel. Tinsley v. Snyder*,

922 F.3d 957, 965 (9th Cir. 2019).  As we set out at length in *Snyder*,

> An error of law is a per se abuse of discretion. Accordingly, we first review a class certification determination for legal error under a de novo standard, and if no legal error occurred, we will proceed to review the decision for abuse of discretion.  A district court applying the correct legal standard abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors.  Additionally, we review the district court's findings of fact under the clearly erroneous standard, meaning we will reverse them only if they are (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record.

*Id.* at 965–66 (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018)).  Notably, in "reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010).

In assessing whether to certify a class, the district court determines whether the requirements of Rule 23 are met. Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so

numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a). Additionally, a proposed class must satisfy one of the subdivisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Owino seeks to proceed under Rule 23(b)(3), which requires "the court find[] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']." Fed R. Civ. P. 23(b)(3). The district court made both findings.

CoreCivic brings three challenges to each of the three certified classes. We review each of these challenges in turn.

## I. CALIFORNIA FORCED LABOR CLASS

### A. Class-wide Policy of Forced Labor

We first consider CoreCivic's assertion that Owino failed to present "[s]ignificant proof" of a class-wide policy of forced labor, thus defeating commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011). To support the California Forced Labor class, Owino provided the declarations of four detainees, all from one facility, but this was *not* the extent or the focus of Owino's "significant proof," nor was it the focus of the district court's decision.

Rather, Owino centered his argument, and the district court centered its holding, on the text of CoreCivic's corporate policies. The sanitation policy requires detainees to remove trash, wash windows, sweep and mop, "thoroughly" scrub toilet bowls, sinks, and showers, and undertake sundry other cleaning responsibilities across the facility. On their face, these policies appear to go beyond those minimal tidying responsibilities laid out in the ICE Standards. The discipline policy further makes clear that detainees are subject to a range of punishments, including disciplinary segregation, for refusal to "clean assigned living area" or "obey a staff member/officer's order."

The persuasive weight of the text of these policies is augmented by the statements of ICE detainees themselves, who declared that they were in fact required to clean common areas—without payment and under threat of punishment—in line with the policies. Further, one of CoreCivic's own senior managers testified that CoreCivic facilities do not have the ability to opt out of these company-wide, "standard policies."

Commonality is necessarily established where there is a class-wide policy to which all class members are subjected. *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). And while "the mere existence of a facially defective written policy—without any evidence that it was implemented in an unlawful manner—does not constitute '[s]ignificant proof' that a class of employees were [*sic*] subject to an unlawful practice," *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 968 (9th Cir. 2020) (internal citation omitted), Owino relied on the written policies *as well as* the testimony of former ICE detainees and CoreCivic's own manager. Although the company "may wish to distance itself from [its employee's] statements," here the "admissions were

material and [are] properly before us." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 966 (9th Cir. 2013).

In view of the highly deferential abuse of discretion standard and the full scope of evidence in the record, we reject CoreCivic's claim that Owino failed to provide "significant proof" of the class-wide policy necessary to satisfy the commonality requirement.

## B.  Predominance of Common Questions

We next consider CoreCivic's claim that Owino failed to establish that common questions predominate over individual ones, thus defeating predominance.  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  Here, they are.

As the district court noted, the California Forced Labor class members "share a large number of common attributes, including that they are immigrants who are or were involuntarily detained in [CoreCivic's] facilities and subjected to common sanitation and disciplinary policies." The claims of these class members all depend on common questions of law and fact—whether CoreCivic utilized threats of discipline to compel detainees to clean its California facilities in violation of state and federal human trafficking statutes.  This is a quintessential "common question" as defined by the Supreme Court: "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (citation omitted).

In other words, the question is appropriate for class-wide resolution because either CoreCivic's company-wide policies and practices violated the law and the rights of the class members, or they didn't. *See Parsons*, 754 F.3d at 678 (holding that the "policies and practices to which all members of the class are subjected . . . are the 'glue' that holds together the putative class . . . either each of the policies and practices is unlawful as to every inmate or it is not"); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020).

CoreCivic argues against predominance largely by attempting to reframe the inquiry, asserting that the district court should have asked whether each class member actually has a viable California TVPA claim. However, this is not the applicable test. In *Tyson Foods*, the Supreme Court instructs that

> [t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

577 U.S. at 453 (internal citations and quotation marks omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*, 31 F.4th 651, 681–82 (9th Cir. 2022) (en banc).

## C.  Statute of Limitations

Finally, we consider CoreCivic's argument that the district court should have narrowed the proposed California Forced Labor class based on the statute of limitations.  While Owino seeks to include all ICE detainees held at a CoreCivic facility in California between January 1, 2006, and the present, CoreCivic argues that because the California TVPA has a seven-year statute of limitations, no detainee who was released before May 31, 2010, can bring a claim.  *See* Cal. Civ. Code § 52.5(c).  The district court ruled that such a finding was premature at the class certification stage: "If discovery indicates that the class period should be limited, the Court will entertain a motion to that effect; however, at this stage in the litigation and on the record before it, the Court is not inclined to narrow the class period."

We agree with the district court that narrowing the class based on statute of limitations is not required at the certification stage.  Along with our sister circuits, we have held this in the context of the predominance inquiry.  *See, e.g.*, *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."); *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 420–21 (5th Cir. 2004); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).  We now clarify that this principle is applicable to certification more broadly.  After all, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  CoreCivic cites no case law to the contrary.  We therefore hold that the district court did not abuse its

discretion in declining to narrow the California Forced Labor class.

## II. NATIONAL FORCED LABOR CLASS

We can dispense with CoreCivic's first two challenges to the National Forced Labor class easily, as these challenges are virtually identical to those directed at the California Forced Labor class. For the same reasons discussed above, the district court did not abuse its discretion in concluding that Owino presented significant proof of a class-wide policy of forced labor. Likewise, the district court did not abuse its discretion in concluding that common questions predominate over individual ones. CoreCivic's argument that the TVPA necessitates a subjective, individualized inquiry fails due to contrary language in the statute, *see, e.g.*, 18 U.S.C. § 1589(c)(2) (defining "serious harm" as that which would compel a "reasonable person" to perform or continue performing labor to avoid incurring such harm), as well as the broader predominance test prescribed by precedent. *Tyson Foods*, 577 U.S. at 453.

However, CoreCivic's appeal with respect to personal jurisdiction is not resolved by what we wrote, above, with respect to the National Forced Labor class. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017). The district court ruled that CoreCivic had waived its personal jurisdiction challenge with respect to the claim of the non-California-facility class members, because it did not raise such a defense in its first responsive pleadings (which CoreCivic filed *after* the Supreme Court decided *Bristol-Myers Squibb*). After the district court's ruling and after CoreCivic filed its opening brief in this appeal, the Ninth Circuit squarely addressed this issue: prior to class certification, a defendant does "not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of

unnamed putative class members who were not yet parties to the case." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).

Although Owino maintains that *Moser* was wrongly decided, we have no authority to ignore circuit precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Owino's challenge to the merit of CoreCivic's personal jurisdiction defense is an issue for the district court to resolve. *See Moser*, 8 F.4th at 879.

We decline to vacate the certification of the National Forced Labor class, but we hold that CoreCivic retains its personal jurisdiction defense and remand the personal jurisdiction question to the district court for consideration at the appropriate time.

## III.    CALIFORNIA LABOR LAW CLASS

### A. Damages Capable of Class-wide Measurement

We first consider CoreCivic's arguments that the members of the California Labor Law class have not presented "a fully formed damages model" and thus cannot be certified. Owino claims that CoreCivic misclassified the detainees participating in the Work Program as "volunteers" rather than "employees" and thus failed to pay them the minimum wage required in California for "employees," in violation of California wage and hour law. The district court certified the class, holding that Owino had met the "evidentiary" burden of "present[ing] proof that damages are capable of being measured on a class-wide basis."

We agree with the district court that Owino did not need to present a fully formed damages model "when discovery was not yet complete and pertinent records may have been

still within Defendant's control." Rather, "plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast*, 569 U.S. at 34). In other words, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (citation omitted).

There is a clear line of causation between the alleged misclassification of detainee employees as "volunteers" and the deprivation of earnings they may have suffered as a consequence of the violation of California wage and hour laws. *See id.* at 1155 (holding that, "[i]n a wage and hour case . . . the employer-defendant's actions *necessarily* caused the class members' injury"). According to evidence from a CoreCivic manager, spreadsheets of wages paid, and CoreCivic's corporate policy itself, ICE detainees participated in the Work Program across CoreCivic's facilities, for which they were almost never paid more than $1.50 per day. If CoreCivic did indeed misclassify these participants as "volunteers" (e.g., because the detainees should have been considered "employees"), CoreCivic would necessarily have failed to pay the minimum hourly wage required by California law. Thus, any damages that the class members are owed necessarily "stemmed from [CoreCivic's] actions." *Id*.

Owino presented sufficient evidence to show that damages are *capable* of measurement on a class-wide basis. This evidence includes documentation of "typical" shift lengths, the days worked by ICE detainees, the wages paid,

and the job assignments.   Additional testimony and CoreCivic records can establish details about which detainees participated in the Work Program, *see Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1087 (9th Cir. 2020), and as the Supreme Court emphasized in *Tyson Foods*, sufficiently reliable representative or statistical evidence can be used to establish the hours that a class of employees had worked. 577 U.S. at 459.

## B. Narrowing the Class

In seeking certification of the California Labor Law class, Owino alleged that detainees' participation in the Program violated a variety of state labor law provisions, as well as California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.   CoreCivic notes, correctly: "Other than the California UCL claim [which has a four-year statute of limitations, *id.* § 17208], all other state law claims have a one-, two-, or three-year statute of limitations."   CoreCivic thus argues that Owino is barred from representing this class at all, because his last day in the Work Program was May 22, 2013, which is more than four years before he filed the May 31, 2017, complaint. (Owino disputes this date, claiming he worked until his release on March 9, 2015.)   CoreCivic further argues that Gomez is time-barred from pursuing non-UCL claims, because his last day in the Work Program was September 7, 2013.

The district court held that, for the purposes of the certification motion, even if the plaintiffs' claims under the California Labor Code are time-barred, they could still recover for the majority of the alleged violations under the UCL because the UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, and naturally this includes such violations of California's wage and hour law.

Under this characterization, the class period for all claims seeking remedies under the UCL begins May 31, 2013; the period for waiting-time and failure-to-pay claims begins May 31, 2014; and the period for claims as to the alleged failure to provide wage statements begins May 31, 2016 (for remedies pursuant to Cal. Code Civ. Proc. § 340), or May 31, 2014 (for remedies pursuant to Cal. Code Civ. Proc. § 338).

As to the named plaintiffs, the district court ruled that neither Owino nor Gomez is typical of the members of the California Labor Law class seeking penalties under California Labor Code § 226 (which requires employers to provide wage statements to employees), and that Gomez is not typical of members of the California Labor Law Class seeking waiting-time penalties under California Labor Code § 203. Nonetheless, the court found that Owino is part of the California Labor Law class for the wage claims, for failure to pay compensation upon termination, and for waiting time penalties and actual damages for the failure to provide wage statements, while Gomez is part of the California Labor Law class for the wage claims. Due to CoreCivic's "belated assertion of . . . factual disputes concerning whether Mr. Owino worked during the Class Period for the California Labor Law Class," the district court stated it was "disinclined to resolve this issue at the class certification stage . . . particularly given that Mr. Gomez remains a viable class representative for the majority of the claims of the California Labor Law Class."

Because plaintiffs can recover for almost all of the alleged violations under the UCL, the district court properly rejected CoreCivic's argument against certification as predicated on "a distinction without a difference." The district court appropriately exercised its discretion by

declining to resolve a factual matter that CoreCivic raised for the first time in its post-hearing supplemental brief, and which the district court concluded was not dispositive of certification.

We agree with the district court that Owino and Gomez are typical of the class they are seeking to represent and their allegations, if true, fit within the statutes they invoke. Although they may run into statute of limitations issues—some disputed and unproven—narrowing the class based on statute of limitations is not required at the certification stage. *Cf. Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981) ("Courts passing upon motions for class certification have generally refused to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's case.").

## C. Failure-to-pay and Waiting-time Claim

Finally, CoreCivic argues that because Owino and Gomez "did not reference their failure-to-pay/waiting-time claim ([Cal. Labor Code] §§ 201–203)" in their motion for class certification, the district court should not have certified that claim as one common to the California Labor Law class. Because the claims are affirmatively interwoven in Owino's pleadings, the district court did not abuse its discretion in certifying this claim.

To begin, the complaint included California Labor Code §§ 201–03 among the causes of action for the California Labor Law class:

> Plaintiffs and Class Members incorporate the
> above allegations by reference.

California Labor Code §§ 201 and 202 require CoreCivic to pay all compensation due and owing to Plaintiffs and Class Members immediately upon discharge or within seventy-two hours of their termination of employment. Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

CoreCivic willfully failed to pay Plaintiffs and Class Members who are no longer employed by CoreCivic compensation due upon termination as required by Cal. Labor Code §§ 201 and 202. As a result, CoreCivic is liable to Plaintiffs and former employee Class Members waiting time penalties provided under Cal. Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

Owino asserted that CoreCivic violated a dozen provisions of the California Labor Code with respect to the members of the California Labor Law class. The motion for class certification then stated, "Plaintiffs' claims on behalf of the CA Labor Law Class for violations of the California Labor Code . . . all turn on a common legal question: whether ICE detainees that worked through the [Work Program] at CoreCivic's facilities in California are employees of CoreCivic under California law . . . ." Owino then discussed this question in depth.

CoreCivic has cited no precedent to suggest that Owino must specifically list the citation of each of the dozen provisions of the California Labor Code in the motion for class certification. Such an approach would exalt form over substance and ignore the fair notice Owino provided to CoreCivic throughout the certification proceeding. Rather, because Owino outlined these provisions substantively in the complaint, stated that "all" of the alleged violations of the Labor Code turn on a common question, and discussed the common question at length, Owino sufficiently referenced this matter before the district court.

### Conclusion

We affirm the district court's certification of all three classes. We hold that CoreCivic retains its personal jurisdiction defense and remand the personal jurisdiction question to the district court for consideration at the appropriate juncture.

**AFFIRMED.**